# EXHIBIT A

## SHARE SALE AGREEMENT

THIS SHARE SALE AGREEMENT is made as of the 27th day of July 2018.

BETWEEN:

> **LEADFX INC.,** (Corporation Number 701607-7) a company continued under the laws of Canada and having an address at 5300 Commerce Court West, 199 Bay St, Toronto, Ontario, Canada M5L1B9 ("**Vendor**")

> AND:

> **RUBY HOLLOW LLC**, a limited liability company incorporated under the laws of the State of Delaware, U.S.A. ("**Purchaser**")

WHEREAS:

A.  The Vendor is the registered and beneficial owner of the 2357 Canada Shares (as defined herein).

B.  The Vendor wishes to sell and the Purchaser wishes to purchase all of the 2357 Canada Shares upon the terms and conditions contained in this Agreement.

**NOW, THEREFORE,** the parties agree as follows:

## ARTICLE 1

## DEFINITIONS AND INTERPRETATION

**Section 1.1    Definitions**.

As used in this Agreement, the following capitalized terms have the following meanings:

(a)    "**2357 Canada**" means 9182357 Canada Ltd;

(b)    "**2357 Canada Shares**" means all of the issued and outstanding shares of 2357 Canada;

(c)    "**Agreement**" means this share sale agreement as it may be amended in writing from time to time;

(d)    "**Ancillary Agreements**" means all agreements, certificates and other instruments delivered or given pursuant to this Agreement;

(e)    "**Business Day**" means any day other than a Saturday, Sunday or other day on which the principal commercial banks in Toronto, Ontario or Vancouver, British Columbia are not open for business;

(f)     **"CCMC"** means Chief Consolidated Mining Company, a corporation incorporated under the laws of the state of Arizona;

(g)     **"CCMC Debts"** means all of the debts owed by CCMC to 2357 Canada as set out in the Debt Assignment Agreement;

(h)     **"CCMC Minority Shareholders"** means the holders of issued common stock, preferred stock and any other issued securities of CCMC, other than 2357 Canada;

(i)     **"CCMC Shares"** means all of the issued and outstanding shares of CCMC legally or beneficially owned by 2357 Canada as at the Closing Date, being 61,089,050 shares of common stock;

(j)     **"Closing"** means the closing of the sale of the 2357 Canada Shares contemplated in this Agreement;

(k)     **"Closing Date"** means the day of Closing, which is to be 21 calendar days following the day on which the last condition precedent under this Agreement is satisfied or waived, or such later date as agreed in writing by the parties;

(l)     **"CP End Date"** means the date which is 60 days after the date of this Agreement, or such later date as agreed in writing by the parties;

(m)     **"Debt Assignment Agreement"** means the agreement between the Vendor and 2357 Canada and 321888 LLC effecting the assignment of the CCMC Debts from 2357 Canada to 321888 LLC dated on or about the date of this Agreement;

(n)     **"Deferred Payment Date"** means the date which is 12 months after the Closing Date;

(o)     **"First Tranche"** has the meaning ascribed thereto in Section 2.4(a);

(p)     **"Permitted Disposals"** means those properties outlined in the memo dated May 4, 2018 included at Schedule D;

(q)     **"Person"** means an individual, partnership, corporation, trust, unincorporated organization, government, or any department or agency thereof, and the successors and assigns thereof or the heirs, executors, administrators or other legal representatives of an individual;

(r)     **"Purchaser"** has the meaning ascribed thereto in the recitals above;

(s)     **"Purchase Price"** has the meaning ascribed thereto in Section 2.2;

(t)     **"Second Tranche"** has the meaning ascribed thereto in Section 2.4(b);

(u)     **"Time of Closing"** means midday on the Closing Date, or such other time on the Closing Date as the parties may mutually agree;

2

(v)    **"Transaction"** means the sale and purchase of the 2357 Canada Shares contemplated by this Agreement;

(w)    **"Trustee in Bankruptcy"** means Grant Thornton Limited, in its capacity as Trustee in Bankruptcy of Andover Mining Corp;

(x)    **"Vendor"** has the meaning ascribed thereto in the recitals above; and

(y)    **"Vendor's Solicitors"** means Stikeman Elliott LLP.

**Section 1.2    Interpretation.**

For the purposes of this Agreement:

(a)    any reference in this Agreement or any Ancillary Agreement to gender includes all genders;

(b)    words importing the singular number only include the plural and vice versa;

(c)    any reference in this Agreement to an article, paragraph, subparagraph, Section or Subsection is a reference to the appropriate article, paragraph, subparagraph, Section or Subsection in this Agreement;

(d)    headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement;

(e)    the words "herein", "hereof" and "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, Subsection, paragraph, subparagraph or other subdivision hereof;

(f)    the word "including" when following any general statement, term or matter, will not be construed to limit such general statement, term or matter to the specific items or matters set forth immediately following such word or to similar items or matters, but will be construed to refer to all other items or matters that could reasonably fall within the scope of such general statement, term or matter, whether or not non-limiting language (such as "without limitation", "but not limited to" or words of similar import) is used with reference thereto; and

(g)    when calculating the period of time within which or following which any act is to be done or step taken pursuant to this Agreement, the date which is the reference date in calculating such period will be excluded and if the last day of such period is a non-Business Day, the period in question will end on the next Business Day.

## ARTICLE 2

## PURCHASED SHARES AND PURCHASE PRICE

**Section 2.1    Sale and Purchase.**

3

Subject to the terms and conditions of this Agreement, the Vendor hereby sells, assigns and transfers to the Purchaser and the Purchaser hereby purchases all rights and interests relating to the 2357 Canada Shares, with effect as of the Closing Date.

**Section 2.2    Purchase Price.**

The aggregate purchase price payable by the Purchaser to the Vendor for purchase of the 2357 Canada Shares is US$2,500,000, subject to the adjustments in accordance with Section 2.4(b) (the "**Purchase Price**").

**Section 2.3    Payment of the Purchase Price.**

The Purchase Price will be paid and satisfied by the Purchaser paying to the Vendor:

(a)    the First Tranche, payable on the Closing Date in accordance with Section 2.4(a); and

(b)    the Second Tranche, payable on the Deferred Payment Date in accordance with Section 2.4(b).

**Section 2.4    Payment of First Tranche and Second Tranche.**

(a)    **First Tranche**

On the Closing Date, the Purchaser must pay the Vendor the sum of US$1,000,000 ("**First Tranche**").

(b)    **Second Tranche**

On the Closing Date, the Purchaser will assume responsibility for the claims of any third party creditor of CCMC that establishes debts legally due to that creditor from CCMC (and which debt or debts were incurred by CCMC prior to the date of this Agreement and which are disclosed in Schedule A, including any interest accruing on the debt to that date) (the "**Third Party Creditors**") up to a total aggregate face value of US$1,500,000. The Second Tranche of the Purchase Price will be satisfied by the Purchaser assuming and resolving the claims of the Third Party Creditors. Further, the Purchaser covenants and agrees with the Vendor that, on the Deferred Payment Date, the Purchaser will pay to the Vendor an amount equal to US$1,500,000 less all amounts the Purchaser has paid to the Third Party Creditors in that 12 month period (the "**Second Tranche**"), and the Purchaser must provide to the Vendor substantiation of all such amounts paid to Third Party Creditors.

**Section 2.5    Taxes and Fees.**

Each of the Purchaser and the Vendor will be responsible for its own expenses, taxes, duties, registration fees or other like charges incurred by such party under applicable law in connection with the Transactions contemplated herein. Each party hereto represents and warrants to the other party that there is no person acting or, to the knowledge of such party, purporting to

4

act at the request of such party, who is entitled to any brokerage or finder's fees in connection with the Transaction that will be payable by the other party.

**ARTICLE 3**

**REPRESENTATIONS AND WARRANTIES**

**Section 3.1 Vendor's Representations and Warranties**

The Vendor represents and warrants as follows to the Purchaser at the date of this Agreement and acknowledges and confirms that the Purchaser is relying upon such representations and warranties in connection with the purchase of the 2357 Canada Shares:

(a)     **Incorporation and Qualification.** The Vendor is a corporation duly incorporated, organised and subsisting under the laws of its jurisdiction of incorporation and has the corporate power to enter into this Agreement and to perform its obligations under this Agreement.

(b)     **Corporate Authority.** The execution and delivery of and performance by the Vendor of this Agreement have been authorised by all necessary corporate action on the part of the Vendor. The transfer of the 2357 Canada Shares to the Purchaser has been authorized by all necessary corporate action on the part of the Vendor.

(c)     **No Violation or Breach.** The execution and delivery of and performance by the Vendor of this Agreement:

    (i) will not (or would not with the giving of notice, the lapse of time or the happening of any other event or condition) result in a breach or violation of or a conflict with, or allow any other Person to exercise any rights under, any of the terms or provisions of the Vendor's constating documents or by-laws;

    (ii) will not (or would not with the giving of notice, the lapse of time or the happening of any other event or condition) result in a breach or violation of or a conflict with, or allow any other Person to exercise any rights under any contracts or instruments to which the Vendor is a party; and

    (iii)     will not result in the violation of any law.

(d)     **Authorisations and Consents.** There is no requirement on the part of the Vendor or 2357 Canada to make any filing with or give any notice to any governmental entity or body, or obtain any order, permit, approval, waiver, license or similar authorization, in connection with the completion of the Transactions contemplated by this Agreement.

(e)     **Execution and Binding Obligation.** This Agreement has been duly and validly executed and delivered by the Vendor and constitutes a legal, valid and binding agreement of the Vendor enforceable against it in accordance with its terms subject only to any limitation under applicable laws relating to (A) bankruptcy, winding-up, insolvency, arrangement and other laws of general application affecting the enforcement of creditors'

rights, and (B) the discretion that a court may exercise in the granting of equitable remedies such as specific performance and injunction .

(f)     **Authorised and Issued Capital.**  The authorised capital of 2357 Canada consists of an unlimited number of common shares of which, at this date, 100 common shares have been duly issued and are outstanding as fully paid and non-assessable.  All of the 2357 Canada Shares have been issued in compliance with all applicable laws including, without limitation, applicable securities laws.

(g)     **No other agreements to purchase.**  Except for the Purchaser's right under this Agreement, and subject to Section 4.3AA, no person has any written or oral agreement, option or warrant or any right or privilege (whether by law, pre-emptive or contractual) capable of becoming such for the purchase or acquisition from the Vendor of any securities or assets of 2357 Canada.

(h)     **Title to 2357 Canada Shares.**  The 2357 Canada Shares are owned by the Vendor as the registered and beneficial owner with a good title, free and clear of all liens, charges, pledges, security interests and other encumbrances other than those restrictions on transfer, if any, contained in the bylaws of 2357 Canada.  Upon completion of the Transactions contemplated by this Agreement, the Purchaser will have good and valid title to the 2357 Canada Shares, free and clear of all liens, charges, pledges, security interests and other encumbrances other than those restrictions on transfer, if any, contained in the constating documents or bylaws of 2357 Canada.

(i)     **Liabilities.** Other than amounts owed by 2357 Canada to the Vendor, as at the date hereof, 2357 Canada does not have any liabilities, obligations or amounts owed in any respect. 2357 Canada has not guaranteed or otherwise given security for or agreed to guarantee or give security for any liability, debt or obligation of any other person. To the knowledge of the Vendor, all of the amounts owed by CCMC to any person (including any government or administrative authority, the Third Party Creditors and the CCMC Debts) are set out in Schedule A to this Agreement.

(j)     **Financial Information.**  2357 Canada has not engaged in any "off balance sheet" or similar financing.

(k)     **Taxes.**  All material tax returns, reports, elections, remittances and payments of 2357 Canada required by applicable law to have been filed or made in any applicable jurisdiction, have been filed or made (as the case may be), and are substantially true, complete and correct, and all taxes of 2357 Canada and CCMC, to the knowledge of the Vendor, have been paid in full.

(l)     **Title to CCMC Shares.**  To the knowledge of the Vendor, CCMC has 73,188,292 common shares and 10,889 preferential shares duly issued and outstanding as fully paid and non-assessable. Other than such shares, to the knowledge of the Vendor there are no other issued and outstanding securities of CCMC. To the knowledge of the Vendor, all of the issued and outstanding securities of CCMC have been issued in compliance with all applicable laws including, without limitation, applicable securities laws. 2357 Canada has

not sold, transferred, assigned or otherwise disposed of any interest (including by way of the grant of a security interest) in the CCMC Shares which it acquired on or about 17 February 2015 from the Trustee in Bankruptcy pursuant to an Agreement of Purchase and Sale between the Trustee in Bankruptcy and Enirgi Group Corporation ("Enirgi") dated December 4 2014 (as amended by an amending agreement dated January 30, 2015) and by way of a written Direction by Enirgi to the Trustee in Bankruptcy to sell the CCMC Shares to 2357 Canada dated 17 February 2015.

(m)     **No Action**. The Vendor is not aware of any action, suit or proceeding, at law or at equity, for or by any court or any federal, provincial, municipal or other governmental department, commission, board, agency or instrumentality which would prevent or materially adversely affect the sale of the 2357 Canada Shares contemplated by this Agreement.

(n)     **Environmental Laws**. Other than as disclosed in Schedule B, to the knowledge of the Vendor:

> (i)     CCMC is not in violation of any federal, state, local, municipal or foreign law or any judicial or administrative interpretation thereof, including any judicial or administrative order, consent decree or judgment, relating to pollution or protection of human health, the environment (including ambient air, surface water, groundwater, land surface or subsurface strata) or wildlife, including laws relating to the release or threatened release of chemicals, pollutants, contaminants, wastes, toxic substances, hazardous substances, petroleum or petroleum products (collectively, **"Hazardous Materials"**) or to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of Hazardous Materials (collectively, **"Environmental Laws"**) except where such violations would not be reasonably expected, on an individual or aggregate basis, to have a material and adverse effect on CCMC,

> (ii)     CCMC has all permits, authorizations and approvals required in respect of its assets under any applicable Environmental Laws and is in compliance with their requirements, except where the failure to have such permits, authorizations and approvals would not reasonably be expected, on an individual or aggregate basis, to have a material and adverse effect on CCMC or its business, and

> (iii)     there are no pending or, to the knowledge of the Vendor, threatened administrative, regulatory or judicial actions, suits, demands, demand letters, claims, liens, notices of non-compliance or violation, investigation or proceedings relating to any Environmental Laws against CCMC that, if determined adversely, would reasonably be expected to have a material and adverse effect on CCMC or its business or assets.

(o)     **No CCMC Shareholders Agreement**. To the knowledge of the Vendor, there is no shareholders' agreement, voting arrangement, trust arrangement, pooling agreement or similar agreements between all or any CCMC shareholders regarding the governance of

7

CCMC or that provides shareholders of CCMC with any rights or obligations other than those provided for under Arizona corporate law.

(p)     **No Litigation**. Other than as disclosed in Schedule C, to the knowledge of the Vendor, there is no action, suit, proceeding, inquiry or investigation before or brought by any court or other governmental authority, domestic or foreign, now pending or, to the knowledge of 2357 Canada, threatened against or affecting 2357 Canada or CCMC. Further, other than as disclosed in Schedule C, there is no outstanding judgement, order, decree, arbitral award or decision of any court, tribunal or other governmental authority against 2357 Canada or CCMC.

(q)     **Disclosure**. All information which has been prepared or compiled by 2357 Canada relating to 2357 Canada, CCMC or their respective business, properties and liabilities, is as of the date of such information, true and correct in all material respects, and no material fact or facts have been omitted therefrom which would make such information misleading.

(r)     **Residence**. The Vendor is a resident of Canada for the purposes of the Income Tax Act (Canada).

**Section 3.2 As Is, Where Is.**

The Purchaser expressly acknowledges that:

(a) 2357 Canada acquired the CCMC Shares from the Trustee in Bankruptcy on an "as is, where is" basis pursuant to an asset purchase agreement between Enirgi and the Trustee in Bankruptcy dated December 4, 2014, as amended by an amending agreement dated January 30, 2015 and by way of a written Direction by Enirgi to the Trustee in Bankruptcy to sell the CCMC Shares to 2357 Canada dated 17 February 2015;

(b) except for the limited representations and warranties contained in Section 3.1, the Purchaser hereby agrees to purchase the 2357 Canada Shares on an 'as is, where is" basis, and the Vendor makes no further or other representations, warranties or assurances, expressed or implied, concerning the 2357 Canada Shares, 2357 Canada or the assets (including for the avoidance of doubt, the CCMC Shares), businesses, prospects, employees, customers, operations or liabilities of 2357 Canada; and

(c) it has entered into this Agreement on the basis that the Vendor does not guarantee title to the assets owned by CCMC, and that the Purchaser has conducted such inspections of the condition of, quantity of and title to such assets as it has deemed appropriate and it has satisfied itself with regard to these matters.

**Section 3.3     Purchaser's Representations and Warranties**

The Purchaser represents and warrants as follows to the Vendor as at the date of this Agreement and acknowledges and confirms that the Vendor is relying upon such representations and warranties in connection with the sale by the Vendor of the 2357 Canada Shares:

8

(a) **Incorporation and Qualification**. The Purchaser is a corporation duly incorporated, organised and subsisting under the laws of the State of Delaware. The Purchaser has the corporate power to enter into this Agreement and to perform its obligations under this Agreement.

(b) **Corporate Authority**. The execution and delivery of and performance by the Purchaser of this Agreement have been authorised by all necessary corporate action on the part of the Purchaser.

(c) **No Violation or Breach**. The execution and delivery of and performance by the Purchaser of this Agreement:

   (i) will not (or would not with the giving of notice, the lapse of time or the happening of any other event or condition) result in a breach or violation of or a conflict with, or allow any other person to exercise any rights under, any of the terms or provisions of the Purchaser's constating documents or by-laws;

   (ii) will not (or would not with the giving of notice, the lapse of time or the happening of any other event or condition) result in a breach or violation of or a conflict with, or allow any other person to exercise any rights under any contracts or instruments to which the Purchaser is a party; and

   (iii) will not result in the violation of any law.

(d) **Execution and Binding Obligation**. This Agreement has been duly and validly executed and delivered by the Purchaser and constitutes a legal, valid and binding agreement of the Purchaser enforceable against it in accordance with its terms, subject only to any limitation under applicable laws relating to (a) bankruptcy, winding-up, insolvency, arrangement and other laws of general application affecting the enforcement of creditors' rights, and (B) the discretion that a court may exercise in the granting of equitable remedies such as specific performance and injunction.

## ARTICLE 4

## CLOSING

**Section 4.1    Closing.**

The Closing shall:

(a) take place at the offices of Stikeman Elliot LLP, 5300 Commerce Court, West 199 Bay St, Toronto, Ontario, Canada M5L1B9 at midday on the Closing Date or at such other place and at such other time as may be agreed upon in writing by the parties; and

(b) occur contemporaneously with the closing (as that word is defined under the Debt Assignment Agreement) of the Debt Assignment Agreement.

**Section 4.2    Covenant**

9

During the period between the date of execution of this Agreement and the Closing Date, the Vendor shall facilitate the right of the Purchaser to enter onto CCMC's properties to conduct such due diligence, survey, geological, environmental and other reviews that the Purchaser deems necessary to complete its due diligence review of the properties, including for the preparation of the reports in Sections 4.3A(b) and (c). All such inspections and investigations shall be undertaken at the Purchaser's cost and expense. Further, the Purchaser agrees to indemnify the Vendor and hold it harmless against all claims against, demands and liability of the Vendor arising as a result of such inspections and investigations.

**Section 4.3     Conditions Precedent**

A. The obligations of the Purchaser hereunder with respect to Closing are subject to satisfaction or waiver of the following conditions on or before the CP End Date:

(a) the Vendor providing all CCMC constating documents, corporate records and documents in the possession of the Vendor, including any materials relating to CCMC's properties;

(b) the Purchaser receiving a phase 1 environmental assessment of CCMC's properties where the scope of the assessment and the work is conducted by a reputable firm mutually acceptable to both the Vendor and the Purchaser and which report shall be obtained by the Purchaser at the cost of up to a maximum of US$25,000 to be borne by the Purchaser; and

(c) the Purchaser receiving a title opinion in respect of CCMC's properties conducted by a reputable firm mutually acceptable to both the Vendor and the Purchaser confirming the good standing of these properties and the status of these properties not being materially different to the disclosures made by the Vendor to the Purchaser and which opinion shall be obtained by the Purchaser at the cost of up to a maximum of US$50,000 to be borne by the Purchaser.

B.     The Purchaser must take all reasonable commercial steps to obtain the reports in Sections 4.3A(b) and (c) by the CP End Date.

C.     The Purchaser must provide a copy of the reports in Sections 4.3A(b) and (c) to the Vendor on receipt.

D.     If all of the conditions set out at Sections 4.3A(a) to (c) (inclusive) are not satisfied or waived by the Purchaser by the CP End Date, this Agreement will terminate and be at an end, other than the confidentiality provisions in Section 5.16 which will continue to bind the parties.

E.     Upon the last of the conditions set out at Sections 4.3(a) to (c) (inclusive) being satisfied, or waived by the Purchaser, the Purchaser must promptly give the Vendor and 2357 Canada a notice in writing to this effect (**"CP Satisfaction Notice"**) and the parties will proceed to Closing in accordance with Section 4.4.

F.      The parties acknowledge and agree that upon the Purchaser providing the CP Satisfaction Notice to 2357 Canada and to the Vendor under Section 4.3E, the Debt Assignment Agreement will become unconditional.

**Section 4.3AA          Maintaining the business of CCMC**

The Purchaser acknowledges and agrees that prior to the CP End Date, the Vendor, 2357 Canada and the directors of CCMC may continue to manage the business and the affairs of CCMC in accordance with its existing operations and commitments, and to undertake such tasks as are required to maintain or improve the existing status of CCMC and its mineral properties. Other than the Permitted Disposals, CCMC may not divest any of its or Chief Gold Mines Inc properties prior to the CP End Date without the prior consent of the Purchaser.

**Section 4.4          Closing Deliveries.**

At the Closing,

(a) the Vendor shall execute and shall deliver to the Purchaser the following:

(i) documents, corporate records, correspondence, minute books, accounting records and other materials of 2357 Canada, including (A) the charter documents and bylaws of 2357 Canada; (B) all resolutions of the board of directors of 2357 Canada approving the transfer of the 2357 Canada Shares to the Purchaser; and (C) all accounting and financial records of 2357 Canada;

(ii) all corporate records and documents, including correspondence, of or relating to CCMC in the possession of the Vendor;

(iii) resignations of the directors of 2357 Canada, being Andrew Worland and David Warner;

(iv) a certificate of status, compliance, good standing or like certificate with respect to 2357 Canada issued by appropriate government officials of their respective jurisdictions of incorporation;

(v) a share certificate representing the 2357 Canada Shares registered in the name of the Purchaser, together with evidence satisfactory to the Purchaser that the Purchaser has been entered upon the books of 2357 Canada as the holder of the 2357 Canada Shares;

(vi) a title insurance policy in favour of the Purchaser, acceptable to the Purchaser, acting reasonably;

(vii)    if necessary, a document confirming that on closing of the Debt Assignment Agreement, 2357 Canada will have no further obligations to the Vendor;

(viii)   unaudited management accounts for the years ended December 31, 2015, December 31, 2016 and December 31, 2017 and as at June 30, 2018 for 2357

11

Canada and CMCC which are materially consistent with those tabled in Schedule E;

(ix) a certificate of an officer of the Vendor confirming that there has been no material change to any of the representations or warranties provided hereunder and that all covenants of the Vendor have been performed or waived; and

(x) such other documents and assurances as may be reasonably required by the Purchaser to give full effect to the intent and meaning of this Agreement; and

(b) the Purchaser shall execute and shall deliver to the Vendor or the Vendor's solicitors as the case may be, the following:

(i) certified copies of: (A) the charter documents and bylaws of the Purchaser; and (B) all resolutions of the board of directors of the Purchaser approving the entering into and completion of the transactions contemplated by this Agreement and the Ancillary Agreements;

(ii) a certificate of status, compliance, good standing or like certificate with respect to the Purchaser issued by appropriate government officials of their respective jurisdictions of incorporation;

(iii) the sum of US$1,000,000 being the First Tranche by way of bank cheque/bank transfer into the Vendor's nominated bank account, as advised by the Vendor to the Purchaser prior to Closing less the amounts incurred by the Purchaser pursuant to Section 4.3A(b) and for the report described at Section 4.3A(c);

(iv) a certificate of an officer of the Purchaser confirming that there has been no material change to any of the representations or warranties provided hereunder and that all covenants of the Purchaser have been performed or waived; and

(v) such other documents and assurances as may be reasonably required by the Vendor to give full effect to the intent and meaning of this Agreement.

**Section 4.5    Specific Performance**

The Vendor acknowledges and agrees the rights of the Purchaser hereunder are unique and the Purchaser will be irreparably damaged if any of the provisions of this Agreement are not duly performed by the Vendor in accordance with the terms herein and therefor the Vendor agrees the Purchaser will have the right to an immediate injunction or other available equitable relief (including specific performance) in a court of competent jurisdiction, enjoining any such breach by the Vendor.

**Section 4.6    Termination**

This Agreement shall terminate and be of no further force or effect if the Closing Date has not occurred prior to December 31, 2018.

## ARTICLE 5

## GENERAL

**Section 5.1 Severability**.

If any one or more of the provisions contained in this Agreement should be invalid, illegal or unenforceable in any respect in any jurisdiction, the validity, legality and enforceability of such provision or provisions shall not in any way be affected or impaired thereby in any other jurisdiction and the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

**Section 5.2 Further Assurances**.

Each of the parties will from time to time after the Closing Date, at the request and expense of the other, take or cause to be taken such action and execute and deliver all such documents and further assurances as may be reasonably necessary to give effect to this Agreement.

**Section 5.3 Notices**.

In this Agreement:

(a) any notice or communication required or permitted to be given under this Agreement will be in writing and will be considered to have been given if delivered by hand, transmitted by facsimile transmission or mailed by prepaid registered post to the address or facsimile transmission number of each party set out below:

    (i)  if to the Vendor:

        LeadFX Inc
        5300 Commerce Court West
        199 Bay St, Toronto
        Ontario, Canada M5L1B9
        Attention: Andrew Worland, Managing Director and CEO
        Email: aworland@leadfxinc.com

        With a copy to:
        Stikeman Elliott LLP
        5300 - 199 Bay Street
        Toronto, ON M5L 1B9
        Attention: Matthew Hunt
        Fax No: 416-947-0866

        With a copy to:
        Tim Buchanan
        PO Box 2139
        Arvada, Colorado 80001

trbwater@gmail.com

(ii) if to the Purchaser:

> Ruby Hollow LLC:
> 150 East 69th Street, Unit 3C,
> New York City, New York 10021
>
> Attention: Douglas Meadow

or to such other address or facsimile transmission number as any party may designate in the manner set out above; and

(b) notice or communication will be considered to have been received:

(i) if delivered by hand during business hours on a Business Day, upon receipt by a responsible representative of the receiver, and if not delivered during business hours, upon the commencement of business on the next Business Day;

(ii) if sent by facsimile transmission during business hours on a Business Day, upon the sender receiving confirmation of the transmission, and if not transmitted during business hours, upon the commencement of business on the next Business Day; and

(iii) if mailed by prepaid registered post upon the fifth Business Day following posting; except that, in the case of a disruption or an impending or threatened disruption in postal services every notice or communication will be delivered by hand or sent by facsimile transmission.

**Section 5.4    Enurement.**

This Agreement will enure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns, provided the Purchaser will not assign the benefit of this Agreement, without the prior written consent of the Vendor, such consent not to be unreasonably withheld.

**Section 5.5    Waiver.**

No waiver of any of the provisions of this Agreement will constitute a waiver of any other provision (whether or not similar). No waiver will be binding unless executed in writing by the party to be bound by the waiver. A party's failure or delay in exercising any right under this Agreement will not operate as a waiver of that right. A single or partial exercise of any right will not preclude a party from any other or further exercise of that right or the exercise of any other right it may have.

**Section 5.6    Currency.**

All references to dollars or currency in this Agreement are to US dollars unless otherwise stated.

**Section 5.7    Survival.**

The representations and warranties of the parties hereto contained in this Agreement are given on the date of this Agreement on the date of Closing and Section 2.4(b) Second Tranche payment provisions, and the confidentiality provisions in section 5.16 will survive Closing.

**Section 5.8    Time.**

Time is of the essence of this Agreement and all documents or instruments delivered hereunder, provided that the time for doing or completing any matter provided for herein may be extended or abridged by an agreement in writing signed by the Vendor and the Purchaser or by their respective solicitors.

**Section 5.9    Invalidity.**

If at any time any one or more of the provisions hereof is or becomes invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions hereof will not in any way be affected or impaired thereby to the fullest extent possible by law.

**Section 5.10 Independent legal advice.**

The Purchaser acknowledges and agrees that it has received independent legal advice with respect to the Transaction and the execution of this Agreement and all related documentation.

**Section 5.11 Expenses.**

All cost and expenses incurred in connection with the preparation of this Agreement and the Transaction will be paid by the party incurring such expenses.

**Section 5.12 Governing Law.**

This Agreement will be governed by and construed in accordance with the laws of the Province of Ontario and the laws of Canada applicable therein.

**Section 5.13 Amendment.**

This Agreement constitutes the entire agreement between the parties and supersedes and replaces all prior agreements and discussions between the parties with respect to the subject matter set forth herein. This Agreement may be varied or amended only by or pursuant to an agreement in writing signed by the parties hereto.

**Section 5.14 Schedules.**

All Schedules attached hereto will be deemed fully a part of this Agreement.

**Section 5.15 Counterparts.**

This Agreement may be signed in one or more counterparts, originally or by facsimile, or by way of email or .pdf, each such counterpart taken together will form one and the same agreement.

**Section 5.16 Confidentiality.**

Each party agrees not to disclose information or documents in relation to any other party that is not publicly available.

**Section 5.17 Minority Shareholders.**

The Purchaser agrees that within the first 12 months following the Closing Date it will consider making an offer to acquire the outstanding securities in CMCC which are not owned by the Purchaser on terms consistent with this Agreement, should it be in the Purchaser's opinion, in the best interests of all CMCC shareholders for the Purchaser to do so.

TO EVIDENCE THEIR AGREEMENT each of the parties has executed this Agreement on the date first above written.

**LEADFX INC:**

Per:

Name: ANDREW WORLEDGE
Title: PRESIDENT & CEO

Per:

Name:
Title: N/A

**RUBY HOLLOW LLC**

Per:

Name: GEOFF STANLEY
Title: MEMBER

Per:

Name: Daryl Meadow
Title: Member

## SCHEDULE A

| Third Party Creditors as at May 31, 2018 | Currency | Amount |
|---|---|---|
| Bruce DiLuzio | USD | 5,216 |
| David Greenway | CAD | 163,126 |
| David Greenway | USD | 148,412 |
| GIS Land Services | USD | 850 |
| Gordon Blankstein | CAD | 7,753 |
| Gordon Blankstein | USD | 349,000 |
| Houshang Shahablou | CAD | 735 |
| Ivie & Young | USD | 41,477 |
| J Roland Vetter | CAD | 17,500 |
| Judy Carlsen | CAD | 3,107 |
| Maryam Amin Shenjani | CAD | 4,800 |
| Meyers Norris Penny LLP | CAD | 26,853 |
| Michael R Carter | USD | 218,776 |
| Mountain View | CAD | 18,000 |
| National Registered Agent | USD | 333 |
| Parsons Behle & Latimer | USD | 9,782 |
| Richard Buell Sutton | CAD | 2,315 |
| Rick Martens | CAD | 46,555 |
| Robert Blankstein | CAD | 62,768 |
| State of Arizona Corporation | USD | 45 |
| Steol Rivee LLP | USD | 20,018 |
| Thomson Reuters (Markets) LLC | CAD | 1,020 |

| Third Party Creditors as at May 31, 2018 | Currency | Amount |
|---|---|---|
| Trillium PC Network Solutions Inc | CAD | 4,200 |
| Turner & Associates | USD | 46,646 |
|  |  |  |
| Weitz Claim | USD | 100,000 |
| Property taxes | USD | 385,440 |
| Blankstein and Young Loans and Advances | USD | 299,561 |

## SCHEDULE B

- Letter from Department of Natural Resources Division of Oil, Gas and Mining dated April 20, 2018 re: Non-compliance with Utah Mined and Reclamation Act and Stipulation Agreement, Chief Consolidated Mining Company, Lime Peak Quarry and Tintic Operations, M49/0047 and M49/0062, Utah County, Utah.
- Citation for Non-Compliance re Lime Peak Quarry, Citation #: MC-2018-60-02 permit number: M/49/0047
- Citation for Non-Compliance re Tintic Operations, Citation #: MC-2018-60-03 permit number: M/49/0062

## SCHEDULE C

**Weitz v. Chief**

Court records in Utah indicate that Chief is subject to a judgement dated October 25, 2013 in the amount of $109,943.12, plus attorney fees and costs of collection incurred subsequent to judgment, with interest accruing at 2.16% per annum, pursuant to a civil claim by Leonard Weitz (the "Weitz Claim"), a former employee of Chief, in the Fourth Judicial District Court of Utah County, Utah.

On September 4, 2015, a judgement lien was issued against approximately 151.5 acres of Chief's fee land with respect to the Weitz Claim.

**Demand Letter of Yvonne and Robert Blankstein**

In July 2017 the brother and (ex?) wife of Gordon Blankstein, through their attorneys, sought repayment of moneys allegedly loaned to Chief: Mr. Blankstein claimed he is owed C$271,972 and Mrs. Blankstein claimed she is owed C$389,478 (inclusive of interest at 20% per annum).

Their counsel has threatened litigation without further notice if not repaid. Chief responded in July 2017 and Blankstein's attorney's reaffirmed their desire to litigate in October 2017. Chief has not responded to the October 2017 correspondence and no further correspondence has been received from the Blankstein's. Chief has been carrying liabilities in its balance sheet for claims made by the Blankstein's.

**MNP LLP v. Andover, Blankstein and Chief**

The former auditor of Andover and Chief is suing Andover, Chief and the former CEO, Gordon Blankstein, for unpaid fees in BC Supreme Court. The total amount claimed is approximately C$25,000 plus interest at 1.5%/month.

## SCHEDULE D

CCMC memo dated May 4, 2018 – refer attached

Chief Consolidated Mining Co.

# MEMORANDUM

---

**To:**   Mary Lou Sperry

**From:** Tim Buchanan

**CC:**   Andrew Worland

**Date:** May 4, 2018

**Re:**   Chief Consolidated Mining Co. – Land Sales

---

Transmitted with this Memorandum are various documents pertaining to the sale of land by Chief Consolidated Mining Co. This Memorandum also discusses the transactions and documents that are being sent to you. To the extent documents are required to be originals for recording at the office of the Juab County Recorder, the originals are noted in this Memorandum and will be sent to you by mail or courier. The transactions are discussed below.

**Release Documents**

The properties are subject to a Deed of Trust from Chief Consolidated Mining Company, an Arizona Corporation, in favor of James L. Ahlstrom, an attorney and member of the Utah State Bar for the benefit of Enirgi Group Corporation, a corporation incorporated under the laws of Canada, dated April 28, 2015, and recorded on May 13, 2015, in the books of the Juab County Recorder as Entry No. 278546, in Book 565 at Page 475 ("2015 Juab Deed of Trust"). The 2015 Juab Deed of Trust was the subject of a Notice of Assignment of Beneficial Interest dated December 15, 2015, from Enirgi Group Corporation, a corporation incorporated under the laws of Canada, to 9182357 Canada Ltd., a corporation incorporated under the laws of Canada, and recorded on December 29, 2015, in the books of the Juab County Recorder as Entry No. 280432, in Book 568 at Page 1411. Transmitted with this Memorandum is a copy of the Partial Reconveyance of Deed of Trust. I will send you the executed original of the Partial Release. Please record the Partial Release at the office of Juab County and return the original Partial Release to me. Please deduct the recording fees from the funds you receive for Chief.

The properties are also subject to a Judgment Lien recorded at the office of the Juab County Recorder on March 3, 2014, as Entry No. 275529, in Book 559 at Page 1505, for the benefit of Leonard Weitz. As you are aware, the attorney for Mr. Weitz has been uncooperative with respect to the pay-off amount and the satisfaction of judgment. Please hold all recording of documents and disbursement of funds until such time as (1) you receive confirmation regarding the pay-off amount and that Mr. Weitz or his attorney will provide a satisfaction of judgment, and (2) you have received sufficient funds from the purchasers of property to pay-off the judgment. Out of the funds received from the purchasers of property as described below you are authorized to pay-off the judgment.

---

Chief Consolidated Mining Co.

# MEMORANDUM

## Authorization

Transmitted with this Memorandum are the following two documents: (1) Resolution Regarding Sale of Properties, and (2) Section 1445 Certification. The two documents apply to all of the transactions described in this Memorandum. The wiring instructions for disbursements to Chief are included in the Addendum to the Escrow Agreement and Closing Instructions.

## Let-Three

The properties to be sold to Let-Three are the following:

| Let-Three Property | Location | Price |
|---|---|---|
| Eureka Office Property | Eureka | $70,000.00 |
| XF-5690 | Mammoth | $391.35 |
| XF-5691 | Mammoth | $204.18 |
| XF-5692 | Mammoth | $578.51 |
| XF-5740 | Mammoth | $510.45 |
| XF-5741 | Mammoth | $561.50 |
| XF-5744 | Mammoth | $425.38 |
| XF-5745 | Mammoth | $731.65 |
| XF-5995-12 | Silver City | $96.99 |
| **Total** | | $73,500.00 |

Transmitted with this Memorandum are the following documents:

- Purchase and Sale Contract, signed by Chief
- Escrow Agreement, with Addendum, signed by Chief
- Quit Claim Deed, signed by Chief

The original of the Quit Claim Deed will be delivered to you.

## Jace Kirgan, Terry L. Kirgan, and Cynthia Kirgan

The property to be sold to Jace Kirgan, Terry L. Kirgan, and Cynthia Kirgan is the following:

Chief Consolidated Mining Co.

# MEMORANDUM

| Property | Location | Price |
|----------|----------|-------|
| XE-4852 | Eureka | $4,600.00 |

Transmitted with this Memorandum are the following documents:
- Purchase and Sale Contract, signed by Chief
- Escrow Agreement, with Addendum, signed by Chief
- Quit Claim Deed, signed by Chief

The original of the Quit Claim Deed will be delivered to you.

**Dayna Kirgan, Chris Rush, and Terry L. Kirgan**

The properties to be sold to Dayna Kirgan, Chris Rush, and Terry L. Kirgan are the following:

| Property | Location | Price |
|----------|----------|-------|
| XE-4875 | Eureka | $2,200.00 |
| XE-4876 | Eureka | $200.00 |
| XE-4878 | Eureka | $400.00 |
| XE-4890-1 | Eureka | $6,400.00 |
| Total | | $9,200.00 |

Transmitted with this Memorandum are the following documents:
- Purchase and Sale Contract, signed by Chief
- Escrow Agreement, with Addendum, signed by Chief
- Quit Claim Deed, signed by Chief

The original of the Quit Claim Deed will be delivered to you.

**Sumitup, LLC**

The properties to be sold to Sumitup, LLC are the following:

| Property | Location | Price |
|----------|----------|-------|
| Parcel | Eureka | $33,000.00 |
| Total | | $33,000.00 |

Transmitted with this Memorandum are the following documents:
- Purchase and Sale Contract, signed by Chief

Chief Consolidated Mining Co.

# **MEMORANDUM**

- Escrow Agreement, with Addendum, signed by Chief
- Quit Claim Deed, signed by Chief

The original of the Quit Claim Deed will be delivered to you.

**The Steven G. Higgs and Nina Higgs Revocable Trust Dated March 12, 2012**

The properties to be sold to The Steven G. Higgs and Nina Higgs Revocable Trust Dated March 12, 2012 are the following:

| Property | Location | Price |
|----------|----------|------------|
| XE-4790 | Eureka | $3,080.00 |
| XE-4791 | Eureka | $1,540.00 |
| XE-4793 | Eureka | $660.00 |
| XE-4794 | Eureka | $1,760.00 |
| Total | | $7,040.00 |

Transmitted with this Memorandum are the following documents:

- Purchase and Sale Contract, signed by Chief
- Escrow Agreement, with Addendum, signed by Chief
- Quit Claim Deed, signed by Chief

The original of the Quit Claim Deed will be delivered to you.

## SCHEDULE E

Unaudited Management Accounts for the years ended December 31, 2015, December 31, 2016, December 31, 2017 and as at June 30, 2018 – refer attached

Unaudited



# 9182357 Canada

**30-Jun-18**

LeadFX acquisition on or about November 13, 2015

For internal use only.  Not for circulation.

## 9182357 Canada
### Statement of Financial Position
LeadFX acquisition on or about November 13, 2015
(In United State Dollars)

**Unaudited**

| | | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|---|
| | | $ | $ | $ | $ |
| **Current assets** | | | | | |
| Cash and cash equivalents | | - | - | - | - |
| Trade and other receivables | | - | - | - | - |
| Prepayments and other current assets | | - | - | - | - |
| | | - | - | - | - |
| **Non-current assets** | | | | | |
| Restricted cash | | - | - | - | - |
| Property, plant and equipment | | - | - | - | - |
| Intercompany Loan Receivable - Chief Consolidation | A | 4,169,268 | 4,018,410 | 3,572,022 | 3,186,663 |
| Investment in Chief Consolidated | | 764,904 | 764,904 | 764,904 | 764,904 |
| | | 4,934,172 | 4,783,314 | 4,336,926 | 3,951,567 |
| **Total assets** | | 4,934,172 | 4,783,314 | 4,336,926 | 3,951,567 |
| **Current liabilities** | | | | | |
| Trade payables | | - | - | - | - |
| Accrued liability | | - | - | - | - |
| Decommissioning liabilities - Current | | - | - | - | - |
| Income tax payable | | - | - | - | - |
| | | - | - | - | - |
| **Non-current liabilities** | | | | | |
| Legacy Loans | | - | - | - | - |
| Decommissioning liabilities - Non Current | | - | - | - | - |
| Secured and Unsecured Amounts Owing to EGC | B | - | - | 100,000 | 100,000 |
| Secured and Unsecured Amounts Owing to LeadFX | C | 816,616 | 771,181 | 282,692 | 54,013 |
| | | 816,616 | 771,181 | 382,692 | 154,013 |
| **Total liabilities** | | 816,616 | 771,181 | 382,692 | 154,013 |
| **Shareholders' equity** | | | | | |
| Share Capital | | 3,797,554 | 3,797,554 | 3,797,554 | 3,797,554 |
| Retained earnings/accumulated losses | | 320,002 | 214,578 | 156,680 | - |
| **Total Equity** | | 4,117,556 | 4,012,132 | 3,954,234 | 3,797,554 |
| | | | | | |
| **Total liabilities and equity** | | 4,934,171 | 4,783,313 | 4,336,925 | 3,951,567 |

# 9182357 Canada

## Statement of Loss and comprehensive loss

LeadFX acquisition on or about November 13, 2015

(In United State Dollars)

Unaudited

|  | June 30 | December 31 | | |
|---|---|---|---|---|
|  | 2018 | 2017 | 2016 | 2015 |
|  | $ | $ | $ | $ |
| Revenue | - | - | - | - |
| Cost of goods sold | - | - | - | - |
| Depreciation | - | - | - | - |
| Distribution and treatment costs | - | - | - | - |
| Inventory impairment | - | - | - | - |
| Royalties | - | - | - | - |
| **Gross profit (loss)** | - | - | - | - |
| Selling, general and administration paid by LeadFX | - | (75,166) | - | - |
| Share of loss of joint ventures | - | - | - | - |
| Exploration, research and development | - | - | - | - |
| Impairment of property, plant and equipment | - | - | - | - |
| Other operating income and expenses | - | - | - | - |
| **Operating income (loss)** | - | (75,166) | - | - |
| Finance income | - | - | - | - |
| Finance expense | - | - | - | - |
| Interest charged by LeadFX on Related Party Loans | (11,093) | (12,087) | (11,700) | - |
| Interest charged to Chief on Related Party Loans | 116,517 | 145,152 | 168,379 | - |
| FX on intercompany balances | - | - | - | - |
| Other income and expense | - | - | - | - |
| **Net income (loss) before tax from continuing operations** | 105,424 | 57,899 | 156,680 | - |
| Income tax recovery (expense) | - | - | - | - |
| **Net income (loss) from continuing operations** | 105,424 | 57,899 | 156,680 | - |
| **Net income (loss), net of tax, from discontinued operations** | - | - | - | - |
| **Net income (loss)** | 105,424 | 57,899 | 156,680 | - |
| Other comprehensive income (loss) income (net of tax) to be | | | | |
| reclassified to the income statement in subsequent periods | | | | |
| Exchange differences on translation of foreign operations | | | | |
| Unrealized change in fair value of investments | | | | |
| Realization of available-for-sale investments | | | | |
| **Other comprehensive income (loss)** | - | - | - | - |
| **Total comprehensive income (loss)** | 105,424 | 57,899 | 156,680 | - |

## 9182357 Canada

### Statement of changes in equity

LeadFX acquisition on or about November 13, 2015
(In United State Dollars)

**Unaudited**

| | Note | Share capital $ | Contributed surplus $ | Fair value reserve $ | Foreign currency translation reserve $ | Accumulated losses $ | Total parent entity interest $ | Non-controlling interest $ | Total equity $ |
|---|---|---|---|---|---|---|---|---|---|
| Balance as at January 1, 2018 | | 3,797,554 | - | - | - | 214,578 | 4,012,132 | - | 4,012,132 |
| Net income/(loss) | | | | | | 105,424 | 105,424 | | 105,424 |
| Foreign currency movement | | | | | | | - | | - |
| Changes in fair value of available-for-sale investment | | | | | | | - | | - |
| Comprehensive income (loss) | | - | - | - | - | 105,424 | 105,424 | - | 105,424 |
| Share-based compensation | | | | | | | - | | - |
| Acquisition of entity with non-controlling interests | | | | | | | - | - | - |
| Divestment of subsidiary | | | | | | | - | | - |
| Balance as at May 31, 2018 | | 3,797,554 | - | - | - | 320,002 | 4,117,556 | - | 4,117,556 |

| | Note | Share capital $ | Contributed surplus $ | Fair value reserve $ | Foreign currency translation reserve $ | Accumulated losses $ | Total parent entity interest $ | Non-controlling interest $ | Total equity $ |
|---|---|---|---|---|---|---|---|---|---|
| Balance as at January 1, 2017 | | 3,797,554 | - | - | - | 156,680 | 3,954,234 | - | 3,954,234 |
| Net income/(loss) | | | | | | 57,899 | 57,899 | | 57,899 |
| Foreign currency movement | | | | | | | - | | - |
| Changes in fair value of available-for-sale investment | | | | | | | - | | - |
| Comprehensive income (loss) | | - | - | - | - | 57,899 | 57,899 | - | 57,899 |
| Share-based compensation | | | | | | | - | | - |
| Acquisition of entity with non-controlling interests | | | | | | | - | - | - |
| Divestment of subsidiary | | | | | | | - | | - |
| Balance as at December 31, 2017 | | 3,797,554 | - | - | - | 214,578 | 4,012,132 | - | 4,012,132 |

| | Note | capital $ | surplus $ | reserve $ | currency $ | losses $ | entity interest $ | interest $ | Total equity $ |
|---|---|---|---|---|---|---|---|---|---|
| Balance as at January 1, 2016 | | 3,797,554 | - | - | - | - | 3,797,554 | - | 3,797,554 |
| Net income/(loss) | | | | | | 156,680 | 156,680 | | 156,680 |
| Foreign currency movement | | | | | | | - | | - |
| Changes in fair value of available-for-sale investment | | | | | | | - | | - |
| Comprehensive income (loss) | | - | - | - | - | 156,680 | 156,680 | - | 156,680 |
| Share-based compensation | | | | | | | - | | - |
| Acquisition of entity with non-controlling interests | | | | | | | - | - | - |
| Divestment of subsidiary | | | | | | | - | | - |
| Balance as at December 31, 2016 | | 3,797,554 | - | - | - | 156,680 | 3,954,234 | - | 3,954,234 |

**9182357 Canada**

## Secured and Unsecured Amounts owed by Chief Consolidated Mining

|  | June 30,2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Secured Promissory Note | 509,316.83 | 494,211.72 | 475,236.71 | 456,848.42 |
| Unsecured Promissory Note | 346,231.40 | 337,860.33 | 327,344.60 | 100,000.00 |
| Unsecured Grid Loan | 106,926.77 | 104,204.79 | - | - |
| Andover Loan | 2,919,699.29 | 2,829,380.93 | 2,715,291.21 | 2,577,000.00 |
| Expenditure paid on Chief's behalf | 287,093.55 | 252,751.92 | 54,149.00 | 52,815.00 |
| Total | 4,169,267.84 | 4,018,409.69 | 3,572,021.52 | 3,186,663.42 |

**Secured Promissory Note**
Emergency loan made by Enirgi on Chief's behalf to avoid EPA super fund. Assigned by Enirgi to 9182357 Ltd (100% subsidiary of LeadFX Inc)

|  | June 30,2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 494,211.72 | 475,236.71 | 456,848.42 | 456,848.42 |
| Advances | - | - | - | - |
| Interest accrued | 15,105.11 | 18,975.01 | 18,388.29 | - |
| Payments | - | - | - | - |
| Closing balance | 509,316.83 | 494,211.72 | 475,236.71 | 456,848.42 |

**Unsecured Promissory Note**
Funding by LeadFX to Chief

|  | June 30,2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 337,860.33 | 327,344.60 | 100,000.00 | 100,000.00 |
| Advances | - | - | 215,644.87 | - |
| Interest accrued | 8,371.07 | 10,515.73 | 11,699.73 | - |
| Payments | - | - | - | - |
| Closing balance | 346,231.40 | 337,860.33 | 327,344.60 | 100,000.00 |

**Unsecured Grid Loan**
Funding by LeadFX to Chief

|  | June 30,2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 104,204.79 | - | - | - |
| Advances | - | 102,633.73 | - | - |
| Interest accrued | 2,721.98 | 1,571.06 | - | - |
| Payments | - | - | - | - |
| Closing balance | 106,926.77 | 104,204.79 | - | - |

**Andover Loan**

|  | June 30,2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 2,829,380.93 | 2,715,291.21 | 2,577,000.00 | 2,577,000.00 |
| Advances | - | - | - | - |
| Interest accrued | 90,318.36 | 114,089.72 | 138,291.21 | - |
| Payments | - | - | - | - |
| Closing balance | 2,919,699.29 | 2,829,380.93 | 2,715,291.21 | 2,577,000.00 |

**Expenditure paid on Chief's behalf**

|  | June 30,2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 252,751.92 | 54,149.00 | 52,815.00 | 52,815.00 |
| Advances | 16,461.63 | 198,602.92 | 1,334.00 | - |
| Management Fees | 17,880.00 | - | - | - |
| Interest accrued | - | - | - | - |
| Payments | - | - | - | - |
| Closing balance | 287,093.55 | 252,751.92 | 54,149.00 | 52,815.00 |

**9182357 Canada**

**Change in Debt from Chief Consolidated - December 31, 2015 to June 30, 2018**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 | Movement |
|---|---|---|---|---|---|
| Debts to LeadFX | 4,169,267.84 | 4,018,409.69 | 3,572,021.52 | 3,186,663.42 | 982,604.42 |

| Cash Related | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 | Movement |
|---|---|---|---|---|---|
| Restricted Cash | | | 40,891 | | 40,891 |
| Payment of legacy creditors | | | 168,012 | | 168,012 |
| Decommisioning expenditure | | 189,997 | | | 189,997 |
| General (Legal, Audit Etc) | 16,462 | 14,701 | 8,076 | | 39,238 |
| Property taxes | | 94,535 | | | 94,535 |
| Income tax | | 2,004 | | | 2,004 |
| Total Cash related | 16,462 | 301,237 | 216,979 | | 534,677 |

| Non Cash Related | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 | Movement |
|---|---|---|---|---|---|
| Interest on loans | 116,517 | 145,152 | 168,379 | | 430,047 |
| Management Fees | 17,880 | | | | 17,880 |
| Movements in debt to LeadFX | 150,858 | 446,388 | 385,358 | | 982,604.41 |

## 9182357 Canada

## Secured and Unsecured Amounts owed to Enirgi

| | May 31, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| **Enirgi Group Corporation** | - | - | (100,000.00) | (100,000.00) |
| **Total** | - | - | **(100,000.00)** | **(100,000.00)** |

**Unsecured Advance**
**Enirgi Group Corporation settlement of Silitoes and Mountford case, recharged to 9182357**

| | May 31, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | - | (100,000.00) | (100,000.00) | (100,000.00) |
| Advances | - | - | - | - |
| Interest accrued | | | | - |
| Transfer | - | 100,000.00 | - | - |
| Closing balance | - | - | (100,000.00) | (100,000.00) |

**9182357 Canada**

**Secured and Unsecured Amounts owed to LeadFXinc**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Unsecured Promissory Note | (346,231.40) | (337,860.33) | (227,344.60) | - |
| Unsecured Grid Loan | (106,926.69) | (104,204.79) | | - |
| Expenditure paid on Chief's behalf | (270,411.54) | (253,949.92) | (55,347.00) | (54,013.00) |
| Management Fees | (93,046.00) | (75,166.00) | - | - |
| **Total** | **(816,615.63)** | **(771,181.04)** | **(282,691.60)** | **(54,013.00)** |

**Unsecured Promissory Note**
**Funding by LeadFX to Chief**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | (337,860.33) | (227,344.60) | - | - |
| Advances | - | (100,000.00) | (215,644.87) | - |
| Interest accrued | (8,371.07) | (10,515.73) | (11,699.73) | - |
| Payments | - | - | - | - |
| Closing balance | (346,231.40) | (337,860.33) | (227,344.60) | - |

**Unsecured Grid Loan**
**Funding by LeadFX to Chief**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | (104,204.79) | - | - | - |
| Advances | - | (102,633.73) | - | - |
| Interest accrued | (2,721.90) | (1,571.06) | - | - |
| Payments | - | - | - | - |
| Closing balance | (106,926.69) | (104,204.79) | - | - |

**Expenditure paid on Chief's behalf**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | (253,949.92) | (55,347.00) | (54,013.00) | (54,013.00) |
| Advances | (16,461.62) | (198,602.92) | (1,334.00) | - |
| Interest accrued | - | - | - | - |
| Payments | - | - | - | - |
| Closing balance | (270,411.54) | (253,949.92) | (55,347.00) | (54,013.00) |

**Management Fees**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | (75,166.00) | - | - | - |
| Management Fees | (17,880.00) | (75,166.00) | - | - |
| Interest accrued | - | - | - | - |
| Payments | - | - | - | - |
| Closing balance | (93,046.00) | (75,166.00) | - | - |

**9182357 Canada**
**Change in Debt to LeadFX - December 31, 2015 to June 30, 2018**

|  | June 30,2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 | Movement |
|---|---|---|---|---|---|
| Debts to LeadFX | (816,615.63) | (771,181.04) | (382,691.60) | (154,013.00) | (662,602.63) |

| Cash Related | June 30,2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 | Movement |
|---|---|---|---|---|---|
| Restricted Cash |  |  | (40,891) |  | (40,891) |
| Payment of legacy creditors |  |  | (168,012) |  | (168,012) |
| Decommisioning expenditure |  | (189,997) |  |  | (189,997) |
| General (Legal, Audit Etc) | (16,462) | (14,701) | (8,076) |  | (39,238) |
| Property taxes |  | (94,535) |  |  | (94,535) |
| Income tax |  | (2,004) |  |  | (2,004) |
| Total Cash related | (16,462) | (301,237) | (216,979) |  | (534,677) |

| Non Cash Related | June 30,2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 | Movement |
|---|---|---|---|---|---|
| Interest on loans | (11,093) | (12,087) | (11,700) |  | (34,879) |
| Management Fees | (17,880) | (75,166) |  |  | (93,046) |
| Movements in debt to LeadFX | (45,435) | (388,489) | (228,679) | - | (662,603) |

# Unaudited



# Chief Consolidated Mining Company

**30-Jun-18**

LeadFX acquisition on or about November 13, 2015
For internal use only.  Not for circulation.

# Chief Consolidated Mining Company
## Statement of Financial Position
LeadFX acquisition on or about November 13, 2015
(In United State Dollars)

**Unaudited**

| | | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|---|
| | | $ | $ | $ | $ |
| **Current assets** | | | | | |
| Cash and cash equivalents | | - | - | - | - |
| Trade and other receivables | | - | - | 2,000 | 1,200 |
| Prepayments and other current assets | | - | - | 9,000 | 9,000 |
| | | - | - | 11,000 | 10,200 |
| **Non-current assets** | | | | | |
| Restricted cash | A | 696,330 | 696,330 | 695,283 | 652,681 |
| Property, plant and equipment | B | 973,123 | 973,123 | 973,123 | 973,123 |
| | | 1,669,453 | 1,669,452 | 1,668,405 | 1,625,804 |
| **Total assets** | | 1,669,453 | 1,669,452 | 1,679,405 | 1,636,004 |
| **Current liabilities** | | | | | |
| Trade payables  - legacy | C | 1,112,976 | 1,094,665 | 1,422,496 | 1,580,295 |
| Accrued liability - legacy | D | 100,000 | 100,000 | 100,000 | 100,000 |
| Trade payables - since acquisition | | - | - | - | - |
| Accrued liability - since acquisition | E | 385,440 | 389,578 | (53,760) | - |
| Decommissioning liabilities - Current | F | 10,003 | 10,003 | 200,000 | - |
| Income tax payable | | - | - | 2,000 | - |
| | | 1,608,419 | 1,594,246 | 1,690,736 | 1,680,295 |
| **Non-current liabilities** | | | | | |
| Legacy Loans | G | 301,197 | 288,249 | 375,974 | 340,777 |
| Decommissioning liabilities - Non Current | F | 492,348 | 492,348 | 492,348 | 651,457 |
| Secured and Unsecured Amounts Owing to LeadFX | H | 4,169,268 | 4,018,409 | 3,572,021 | 3,186,663 |
| | | 4,962,813 | 4,799,006 | 4,440,343 | 4,178,897 |
| **Total liabilities** | | 6,571,231 | 6,393,252 | 6,131,080 | 5,859,192 |
| **Shareholders' equity** | | | | | |
| Share Capital | | 44,787,989 | 44,787,989 | 44,787,989 | 44,787,989 |
| Retained earnings/accumulated losses | | (49,689,768) | (49,511,789) | (49,239,663) | (49,011,177) |
| **Total Equity** | | (4,901,779) | (4,723,800) | (4,451,674) | (4,223,188) |
| | | | | | |
| **Total liabilities and equity** | | 1,669,453 | 1,669,452 | 1,679,405 | 1,636,004 |

# Chief Consolidated Mining Company
## Statement of Loss and comprehensive loss
LeadFX acquisition on or about November 13, 2015
(in United State Dollars)

**Unaudited**

| | June 2018 $ | December 2017 $ | December 2016 $ | December 2015 $ |
|---|---|---|---|---|
| **Revenue** | - | - | - | - |
| Cost of goods sold | - | - | - | - |
| Depreciation | - | - | - | - |
| Distribution and treatment costs | - | - | - | - |
| Inventory impairment | - | - | - | - |
| Royalties | | - | - | - |
| **Gross profit (loss)** | - | - | - | - |
| Selling, general and administration paid by LeadFX | (150,857) | (360,869) | (152,106) | (31,302) |
| Share of loss of joint ventures | - | - | | |
| Exploration, research and development | - | - | - | (10,068) |
| Impairment of property, plant and equipment | - | - | - | |
| Other operating income and expenses | - | - | - | - |
| **Operating income (loss)** | (150,857) | (360,869) | (152,106) | (41,370) |
| Finance income | - | 1,047 | 1,711 | |
| Finance expense | (14,174) | - | (40,891) | - |
| Interest on Legacy Loans | (12,948) | 87,697 | (35,197) | (21,425) |
| FX on intercompany balances | - | - | | |
| Other income and expense | - | - | - | 23,205 |
| **Net income (loss) before tax from continuing operations** | (177,979) | (272,125) | (226,483) | (39,590) |
| Income tax recovery (expense) | - | - | (2,004) | - |
| **Net income (loss) from continuing operations** | (177,979) | (272,125) | (228,487) | (39,590) |
| **Net income (loss), net of tax, from discontinued operations** | - | - | - | - |
| **Net income (loss)** | (177,979) | (272,125) | (228,487) | (39,590) |
| Other comprehensive income (loss) income (net of tax) to be | | | | |
| reclassified to the income statement in subsequent periods | | | | |
| Exchange differences on translation of foreign operations | | | | |
| Unrealized change in fair value of investments | | | | |
| Realization of available-for-sale investments | | | | |
| **Other comprehensive income (loss)** | - | - | - | - |
| **Total comprehensive income (loss)** | (177,979) | (272,125) | (228,487) | (39,590) |

# Chief Consolidated Mining Company

## Statement of changes in equity

**Unaudited**

LeadFX acquisition on or about November 13, 2015
(In United State Dollars)

| | Note | Share capital $ | Contributed surplus $ | Fair value reserve $ | Foreign currency translation reserve $ | Accumulated losses $ | Total parent entity interest $ | Non-controlling Interest $ | Total equity $ |
|---|---|---|---|---|---|---|---|---|---|
| Balance as at January 1, 2016 | | 44,787,989 | - | - | - | (49,511,789) | (4,723,800) | | (4,723,800) |
| Net income/(loss) | | | | | | (177,979) | (177,979) | | (177,979) |
| Foreign currency movement | | | | | | | | | |
| Changes in fair value of available-for-sale investment | | | | | | | - | | - |
| Comprehensive income (loss) | | - | - | - | - | (177,979) | (177,979) | - | (177,979) |
| Share-based compensation | | | | | | | - | | - |
| Acquisition of entity with non-controlling interests | | | | | | | - | - | - |
| Divestment of subsidiary | | | | | | | - | | - |
| Balance as at January 00, 1900 | | 44,787,989 | - | - | - | (49,689,768) | (4,901,779) | - | (4,901,779) |

| | Note | Share capital $ | Contributed surplus $ | Fair value reserve $ | Foreign currency translation reserve $ | Accumulated losses $ | Total parent entity interest $ | Non-controlling Interest $ | Total equity $ |
|---|---|---|---|---|---|---|---|---|---|
| Balance as at January 1, 2016 | | 44,787,989 | - | - | - | (49,239,663) | (4,451,674) | | (4,451,674) |
| Net income/(loss) | | | | | | (272,125) | (272,125) | | (272,125) |
| Foreign currency movement | | | | | | | - | | - |
| Changes in fair value of available-for-sale investment | | | | | | | - | | - |
| Comprehensive income (loss) | | - | - | - | - | (272,125) | (272,125) | - | (272,125) |
| Share-based compensation | | | | | | | - | | - |
| Acquisition of entity with non-controlling interests | | | | | | | - | - | - |
| Divestment of subsidiary | | | | | | | - | | - |
| Balance as at June 30, 2018 | | 44,787,989 | - | - | - | (49,511,789) | (4,723,800) | - | (4,723,800) |

| | Note | capital $ | surplus $ | reserve $ | currency $ | losses $ | entity interest $ | Interest $ | Total equity $ |
|---|---|---|---|---|---|---|---|---|---|
| Balance as at January 1, 2016 | | 44,787,989 | - | - | - | (49,011,177) | (4,223,188) | | (4,223,188) |
| Net income/(loss) | | | | | | (228,486) | (228,486) | | (228,486) |
| Foreign currency movement | | | | | | | - | | - |
| Changes in fair value of available-for-sale investment | | | | | | | - | | - |
| Comprehensive income (loss) | | - | - | - | - | (228,486) | (228,486) | - | (228,486) |
| Share-based compensation | | | | | | | - | | - |
| Acquisition of entity with non-controlling interests | | | | | | | - | - | - |
| Divestment of subsidiary | | | | | | | - | | - |
| Balance as at December 31, 2016 | | 44,787,989 | - | - | - | (49,239,663) | (4,451,674) | - | (4,451,674) |

**Chief Consolidated Mining Company**
**Restricted Cash**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 696,330.00 | 695,283.00 | 652,681.00 | 652,681.00 |
| Additions | - | - | 40,891.00 | - |
| Interest | - | 1,047.00 | 1,711.00 | - |
| Withdrawals | - | - | - | - |
| Closing balance | 696,330.00 | 696,330.00 | 695,283.00 | 652,681.00 |

Restricted Cash is held in trust under the control of Utah Division of Oil, Gas and Mining. The funds are held to ensure reclamation of the mine properties.

# Chief Consolidated Mining Company
## PP&E Continuity Schedule

| | original cost | Accum Dep'n - opening balance | Accum Dep'n ending balance | NBV ending balance |
|---|---|---|---|---|
| Mobile Equipment | 15,211.39 | (7,677.00) | (7,677.00) | 7,534.39 |
| Freehold Land and Buildings | 981,010.00 | (22,421.75) | (22,421.75) | 958,588.25 |
| Furniture fittings and equipment | 20,000.00 | (13,000.00) | (13,000.00) | 7,000.00 |
| Plant and Machinery | 200,000.00 | (200,000.00) | (200,000.00) | - |
| | 1,216,221.39 | (243,098.75) | (243,098.75) | 973,122.64 |

**Chief Consolidated Mining Company**
**Supplier Aged Summary As at 08/30/2018**

| Names | Currency | Total |
|---|---|---|
| Bruce DiLullo | USD | 5,216.00 |
| David Greenway (amounts in Canadian Dollars) | CAD | 193,195.44 |
| David Greenway.ca | USD | 146,411.51 |
| Fraser Milner Casgrain (amounts in Canadian Dollars) | CAD | 0.01 |
| G.I.S. Land Services | USD | 850.00 |
| Gordon Blankstein (amounts in Canadian Dollars) | CAD | 7,732.88 |
| Gordon Blankstein JS | USD | 346,000.00 |
| Houriong Shahabiou (amounts in Canadian Dollars) | CAD | 759.00 |
| Ira & Young | CAD | 41,476.81 |
| J. Board Salter (amounts in Canadian Dollars) | CAD | 17,000.00 |
| Jody Carlson (amounts in Canadian Dollars) | CAD | 3,107.39 |
| Margent Arch Stranjen (amounts in Canadian Dollars) | CAD | 4,800.00 |
| Meyers Norris Penny LLP (amounts in Canadian Dollars) | CAD | 26,693.18 |
| Michael R. Carter | CAD | 218,779.95 |
| Mountain View (amounts in Canadian Dollars) | CAD | 18,500.00 |
| National Registered Agent .com | USD | 302.80 |
| Parsons Behle & Latimer | USD | 9,762.00 |
| Richard Buell Sutton (amounts in Canadian Dollars) | CAD | 2,315.65 |
| Risk Masters (amounts in Canadian Dollars) | CAD | 48,555.04 |
| Robert Blankstein (amounts in Canadian Dollars) | CAD | 62,706.00 |
| State of Arizona Corporation Commission | USD | 45.00 |
| Stoel Rives LLP | USD | 26,017.61 |
| Thomson Reuters (Markets) LLC (amounts in Canadian Dollars) | CAD | 1,015.98 |
| TriburriPC Network Solutions Inc. (amounts in Canadian Dollars) | CAD | 4,296.40 |
| Turner and Associates | USD | 45,045.67 |

| Total outstanding to: | | USD |
|---|---|---|
| United States Dollars | USD | 640,593.65 |
| Canadian Dollars | CAD | 271,423.15 |
| **Total** | | **1,111,973.80** |

---

**Chief Consolidated Mining Company**
**Supplier Aged Summary As at 12/31/2017**

| Names | Currency | Total |
|---|---|---|
| Bruce DiLullo | USD | 5,216.00 |
| David Greenway (amounts in Canadian Dollars) | CAD | 193,195.44 |
| David Greenway.ca | USD | 146,411.51 |
| Fraser Milner Casgrain (amounts in Canadian Dollars) | CAD | 0.01 |
| G.I.S. Land Services | USD | 850.00 |
| Gordon Blankstein (amounts in Canadian Dollars) | CAD | 7,732.88 |
| Gordon Blankstein JS | USD | 346,000.00 |
| Houriong Shahabiou (amounts in Canadian Dollars) | CAD | 759.00 |
| Ira & Young | CAD | 41,476.81 |
| J. Board Salter (amounts in Canadian Dollars) | CAD | 17,000.00 |
| Jody Carlson (amounts in Canadian Dollars) | CAD | 3,107.39 |
| Margent Arch Stranjen (amounts in Canadian Dollars) | CAD | 4,800.00 |
| Meyers Norris Penny LLP (amounts in Canadian Dollars) | CAD | 26,693.18 |
| Michael R. Carter | CAD | 218,779.95 |
| Mountain View (amounts in Canadian Dollars) | CAD | 18,500.00 |
| National Registered Agent .com | USD | 302.80 |
| Parsons Behle & Latimer | USD | 9,762.00 |
| Richard Buell Sutton (amounts in Canadian Dollars) | CAD | 2,315.65 |
| Risk Masters (amounts in Canadian Dollars) | CAD | 48,555.04 |
| Robert Blankstein (amounts in Canadian Dollars) | CAD | 62,706.00 |
| State of Arizona Corporation Commission | USD | 45.00 |
| Stoel Rives LLP | USD | 26,017.61 |
| Thomson Reuters (Markets) LLC (amounts in Canadian Dollars) | CAD | 1,015.98 |
| TriburriPC Network Solutions Inc. (amounts in Canadian Dollars) | CAD | 4,296.40 |
| Turner and Associates | USD | 45,045.67 |

| Total outstanding to: | | USD |
|---|---|---|
| United States Dollars | USD | 640,593.65 |
| Canadian Dollars | CAD | 341,283.47 |
| **Total** | | **1,111,944.52** |

---

**Chief Consolidated Mining Company**
**Supplier Aged Summary As at 12/31/2016**

| Names | Currency | Total |
|---|---|---|
| Bruce DiLullo | USD | 5,216.00 |
| David Greenway (amounts in Canadian Dollars) | CAD | 193,195.44 |
| David Greenway.ca | USD | 146,411.51 |
| Fraser Milner Casgrain (amounts in Canadian Dollars) | CAD | 0.01 |
| G.I.S. Land Services | USD | 850.00 |
| Gordon Blankstein (amounts in Canadian Dollars) | CAD | 7,732.88 |
| Gordon Blankstein JS | USD | 346,000.00 |
| Houriong Shahabiou (amounts in Canadian Dollars) | CAD | 759.00 |
| Ira & Young | CAD | 41,476.81 |
| J. Board Salter (amounts in Canadian Dollars) | CAD | 17,000.00 |
| Jody Carlson (amounts in Canadian Dollars) | CAD | 3,107.39 |
| Margent Arch Stranjen (amounts in Canadian Dollars) | CAD | 4,800.00 |
| Meyers Norris Penny LLP (amounts in Canadian Dollars) | CAD | 26,693.18 |
| Michael R. Carter | CAD | 218,779.95 |
| Mountain View (amounts in Canadian Dollars) | CAD | 18,500.00 |
| National Registered Agent .com | USD | 302.80 |
| Parsons Behle & Latimer | USD | 9,762.00 |
| Property taxes - Juab County & Utah County | USD | 163,601.00 |
| Sorel delinquency fees | USD | 158,803.00 |
| Richard Buell Sutton (amounts in Canadian Dollars) | CAD | 2,315.65 |
| Risk Masters (amounts in Canadian Dollars) | CAD | 48,555.04 |
| Robert Blankstein (amounts in Canadian Dollars) | CAD | 62,706.00 |
| State of Arizona Corporation Commission | USD | 45.00 |
| Stoel Rives LLP | USD | 26,017.61 |
| Thomson Reuters (Markets) LLC (amounts in Canadian Dollars) | CAD | 1,015.98 |
| TriburriPC Network Solutions Inc. (amounts in Canadian Dollars) | CAD | 4,296.40 |
| Turner and Associates | USD | 45,045.67 |

| Total outstanding to: | | USD |
|---|---|---|
| United States Dollars | USD | 1,163,501.65 |
| Canadian Dollars | CAD | 304,735.41 |
| **Total** | | **1,423,401.84** |

---

**Chief Consolidated Mining Company**
**Supplier Aged Summary As at 12/31/2015**

| Names | Currency | Total |
|---|---|---|
| Bruce DiLullo | USD | 5,216.00 |
| David Greenway (amounts in Canadian Dollars) | CAD | 193,195.44 |
| David Greenway.ca | USD | 238,953.81 |
| Fraser Milner Casgrain (amounts in Canadian Dollars) | CAD | 0.01 |
| G.I.S. Land Services | USD | 850.00 |
| Gordon Blankstein (amounts in Canadian Dollars) | CAD | 7,732.88 |
| Gordon Blankstein JS | USD | 346,000.00 |
| Houriong Shahabiou (amounts in Canadian Dollars) | CAD | 759.00 |
| Ira & Young | CAD | 41,476.81 |
| J. Board Salter (amounts in Canadian Dollars) | CAD | 17,000.00 |
| Jody Carlson (amounts in Canadian Dollars) | CAD | 3,107.39 |
| Margent Arch Stranjen (amounts in Canadian Dollars) | CAD | 4,800.00 |
| Meyers Norris Penny LLP (amounts in Canadian Dollars) | CAD | 26,693.18 |
| Michael R. Carter | CAD | 218,779.95 |
| Mountain View (amounts in Canadian Dollars) | CAD | 18,500.00 |
| National Registered Agent .com | USD | 302.80 |
| Parsons Behle & Latimer | USD | 9,762.00 |
| Property taxes - Juab County & Utah County | USD | 163,601.00 |
| Sorel delinquency fees | USD | 158,803.00 |
| Richard Buell Sutton (amounts in Canadian Dollars) | CAD | 2,315.65 |
| Risk Masters (amounts in Canadian Dollars) | CAD | 48,555.04 |
| Robert Blankstein (amounts in Canadian Dollars) | CAD | 62,706.00 |
| State of Arizona Corporation Commission | USD | 45.00 |
| Stoel Rives LLP | USD | 8,017.56 |
| Thomson Reuters (Markets) LLC (amounts in Canadian Dollars) | CAD | 1,015.98 |
| TriburriPC Network Solutions Inc. (amounts in Canadian Dollars) | CAD | 4,296.40 |
| Turner and Associates | USD | 45,045.67 |

| Total outstanding to: | | USD |
|---|---|---|
| United States Dollars | USD | 1,020,759.80 |
| Canadian Dollars | CAD | 256,134.59 |
| **Total** | | **1,515,914.48** |

# Chief Consolidated Mining Company
# Accrued Liability Legacy

| Month | Additions ($USD) | Notes |
|-------|------------------|-------|
| 31-Dec-15 | 100,000.00 | Accrual for Weitz Judgement 25th October 2013 |
| **Total** | **100,000.00** | |

# Chief Consolidated Mining Company
# Accrued liabilities

| Month | Additions ($USD) | Notes |
|-------|------------------|-------|
| 31-Dec-17 | 183,851.00 | Property Taxes - Pre 2016 |
| 31-Dec-17 | 100,895.00 | Property Taxes - 2016 |
| 31-Dec-17 | 100,694.00 | Property Taxes - 2017 |
| **Total** | **385,440.00** | |

**Chief Consolidated Mining Company**
**Decommissioning Liability**

## Current Decommissioning

|  | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 10,002.69 | 200,000.00 | - | - |
| Additions |  | - | - | - |
| Transfer from Non Current |  | - | 200,000.00 | - |
| Rehabilitation |  | (189,997.31) | - | - |
| Closing balance | 10,002.69 | 10,002.69 | 200,000.00 | - |

## Non Current Decommissioning

|  | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 492,348.00 | 492,348.00 | 651,457.00 | 651,457.00 |
| Additions |  | - | - | - |
| Transfer to Current |  | - | (200,000.00) | - |
| Increase in Restricted Cash |  | - | 40,891.00 | - |
| Closing balance | 492,348.00 | 492,348.00 | 492,348.00 | 651,457.00 |

**Chief Consolidated Mining Company**

**Legacy Loans**                                            **The validity of these loans is uncertain**

|  | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| **Blankstein Y** | 169,673.09 | 161,958.28 | 214,187.34 | 194,102.84 |
| **Blankstein R** | 114,741.59 | 109,508.71 | 146,059.97 | 132,363.82 |
| **Young S** | 16,782.48 | 16,782.48 | 15,726.48 | 14,310.17 |
| Total | **301,197.16** | **288,249.47** | **375,973.79** | **340,776.83** |

**Blankstein Y**

|  | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |  |
|---|---|---|---|---|---|
| Opening balance | 161,958.28 | 214,187.34 | 194,102.84 | 194,102.84 |  |
| Advances | - | - | - | - |  |
| Interest accrued | 7,714.81 | (52,229.06) | 20,084.50 | - | In 2017, interest charges were reviewed and adjusted |
| Payments | - | - | - | - |  |
| Closing balance | 169,673.09 | 161,958.28 | 214,187.34 | 194,102.84 |  |

**Blankstein R**

|  | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |  |
|---|---|---|---|---|---|
| Opening balance | 109,508.71 | 146,059.97 | 132,363.82 | 132,363.82 |  |
| Advances | - | - | - | - |  |
| Interest accrued | 5,232.88 | (36,551.26) | 13,696.15 | - | In 2017, interest charges were reviewed and adjusted |
| Payments | - | - | - | - |  |
| Closing balance | 114,741.59 | 109,508.71 | 146,059.97 | 132,363.82 |  |

## Young S

|  | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 16,782.48 | 15,726.48 | 14,310.17 | 14,310.17 |
| Advances | - | - | - | - |
| Interest accrued | - | 1,056.00 | 1,416.31 | - |
| Payments | - | - | - | - |
| Closing balance | 16,782.48 | 16,782.48 | 15,726.48 | 14,310.17 |

**Chief Consolidated Mining Company**

**Secured and Unsecured Amounts Owing to 9182357**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Secured Promissory Note | 509,316.83 | 494,211.72 | 475,236.71 | 456,848.42 |
| Unsecured Promissory Note | 346,231.41 | 337,860.33 | 327,344.60 | 100,000.00 |
| Unsecured Grid Loan | 106,926.70 | 104,204.79 | - | - |
| Andover Loan | 2,919,699.29 | 2,829,380.93 | 2,715,291.21 | 2,577,000.00 |
| Expenditure paid on Chief's behalf | 287,093.54 | 252,751.92 | 54,149.00 | 52,815.00 |
| Total | 4,169,267.77 | 4,018,409.69 | 3,572,021.52 | 3,186,663.42 |

**Secured Promissory Note**
Emergency loan made by Enirgi on Chief's behalf to avoid EPA super fund. Assigned by Enirgi to 9182357 Ltd (100% subsidiary of LeadFX Inc)

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 494,211.72 | 475,236.71 | 456,848.42 | 456,848.42 |
| Advances | - | - | - | - |
| Interest accrued | 15,105.11 | 18,975.01 | 18,388.29 | - |
| Payments | - | - | - | - |
| Closing balance | 509,316.83 | 494,211.72 | 475,236.71 | 456,848.42 |

**Unsecured Promissory Note**
Funding by LeadFX to Chief

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 337,860.33 | 327,344.60 | 100,000.00 | 100,000.00 |
| Advances | - | - | 215,644.87 | - |
| Interest accrued | 8,371.08 | 10,515.73 | 11,699.73 | - |
| Payments | - | - | - | - |
| Closing balance | 346,231.41 | 337,860.33 | 327,344.60 | 100,000.00 |

**Unsecured Grid Loan**
Funding by LeadFX to Chief

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 104,204.79 | - | - | - |
| Advances | - | 102,633.73 | - | - |
| Interest accrued | 2,721.91 | 1,571.06 | - | - |
| Payments | - | - | - | - |
| Closing balance | 106,926.70 | 104,204.79 | - | - |

**Andover Loan**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 2,829,380.93 | 2,715,291.21 | 2,577,000.00 | 2,577,000.00 |
| Advances | - | - | - | - |
| Interest accrued | 90,318.36 | 114,089.72 | 138,291.21 | - |
| Payments | - | - | - | - |
| Closing balance | 2,919,699.29 | 2,829,380.93 | 2,715,291.21 | 2,577,000.00 |

**Expenditure paid on Chief's behalf**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
|---|---|---|---|---|
| Opening balance | 252,751.92 | 54,149.00 | 52,815.00 | 52,815.00 |
| Advances | 34,341.62 | 198,602.92 | 1,334.00 | - |
| Interest accrued | - | - | - | - |
| Payments | - | - | - | - |
| Closing balance | 287,093.54 | 252,751.92 | 54,149.00 | 52,815.00 |

**Chief Consolidated Mining Company**
**Change in Debt to LeadFX from December 31, 2015 to June 30, 2018**

| | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 | Movement |
|---|---|---|---|---|---|
| Debts to LeadFX | 4,169,268 | 4,018,409 | 3,572,022 | 3,186,663 | 982,604 |

| Cash Related | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 | Movement |
|---|---|---|---|---|---|
| Restricted Cash | | | 40,891 | | 40,891 |
| Payment of legacy creditors | 13,454 | | 168,012 | | 181,466 |
| Decommisioning expenditure | | 189,997 | | | 189,997 |
| General (Legal, Audit Etc) | 3,008 | 14,701 | 8,076 | | 25,784 |
| Property taxes | | 94,535 | | | 94,535 |
| Income tax | | 2,004 | | | 2,004 |
| Total Cash related | 16,462 | 301,237 | 216,979 | | 534,677 |

| Non Cash Related | June 30, 2018 | December 31, 2017 | December 31, 2016 | December 31, 2015 | Movement |
|---|---|---|---|---|---|
| Interest on loans | 116,516 | 145,152 | 168,379 | | 430,047 |
| Management Fees | 17,880 | | | | |
| Movements in debt to LeadFX | 150,858 | 446,388 | 385,358 | | 982,604 |