UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
GREGORY MCGOWAN, et al.,      :          22cv6971 (DLC)
                              :
                 Plaintiffs,  :
            -v-               :          OPINION AND ORDER
                              :
GEOFF STANLEY, et al.,        :
                              :
                 Defendants.  :
------------------------------X

APPEARANCES:

For the plaintiffs:
A.M. Richardson, P.C.
Ambrose Madison Richardson, III
40 Wall Street, 35th Floor
New York, NY 10005

For the defendants:
Parr Brown Gee & Loveless
Matthew J. Ball
101 South 200 East, Suite 700
Salt Lake City, UT 84111


DENISE COTE, District Judge:

        Plaintiffs were once minority shareholders of Chief

Consolidated Mining Company ("Chief").  In 2022, they sold their

shares during a corporate buyout.  They have brought suit

against Ruby Hollow LLC ("Ruby Hollow"), which once owned a

majority interest in Chief, and two of its managers.  Plaintiffs

assert that Ruby Hollow improperly used Chief's assets to

acquire its shares and that it structured subsequent

transactions for the personal benefit of defendants.

Defendants have moved for summary judgment dismissing plaintiffs' claims in their entirety.  Plaintiffs have moved for partial summary judgment on their claim for breach of fiduciary duty.  The plaintiffs largely declined to participate in discovery and have not offered admissible evidence sufficient to defeat the defendants' motion or to support their own motion. For the following reasons, defendants' motion is granted, and plaintiffs' motion is denied.

## BACKGROUND

I.   2018 Ruby Hollow and LeadFX Transactions

Chief, a mining company with assets in Utah and Arizona, was founded over a century ago and was publicly traded until 2011, when the SEC revoked its registration.  It thereafter filed for bankruptcy.  In 2015, a subsidiary of LeadFX, Inc. ("LeadFX") purchased the majority interest in Chief.

In 2018, Ruby Hollow and LeadFX entered into agreements (the "Share Sale Agreement" and the "Debt Assignment Agreement") whereby Ruby Hollow would acquire the majority interest in Chief, as well as certain of Chief's debts to LeadFX and to third party creditors.  At the time, Chief had approximately $6 million in debt, including over $4 million in debt to LeadFX; was delinquent on taxes and bond requirements; and had not had any active mining operations for over a decade.

<u>The Share Sale Agreement</u>

The Share Sale Agreement provided for an aggregate purchase price of $2.5 million, to be divided into two "tranches."  The first tranche was a payment of $1 million, due on December 4, 2018, and not subject to any offsets.  The second tranche, representing the remaining balance of the aggregate purchase price for LeadFX's shares in Chief, was to be satisfied by Ruby Hollow assuming and resolving the claims of third-party creditors of Chief, up to a total of $1.5 million.  Ruby Hollow agreed to assume responsibility for the claims of third-party creditors on the closing date (December 4, 2018); then, on December 4, 2019, Ruby Hollow would pay LeadFX an amount equal to $1.5 million less all amounts Ruby Hollow had paid to third party creditors in that twelve-month period.

Because the contract was between LeadFX and Ruby Hollow only -- that is, Chief was not a party to it -- it did not create a legal obligation on the part of Ruby Hollow to satisfy Chief's debts.  Instead, it created a means by which the parties to the contract (LeadFX and Ruby Hollow) could agree on a purchase price for LeadFX's shares given the uncertain impact of Chief's liabilities on its value.  Ruby Hollow, as the controlling shareholder, risked losing all or a portion of the value of its investment in Chief if Chief's debts turned out to be enforceable; thus, the Share Sale Agreement provided a

3

mechanism for the purchase price to reflect the value of the shares.

### The Debt Assignment Agreement

Pursuant to the Debt Assignment Agreement, LeadFX assigned to Ruby Hollow its interest in the more than $4 million in debt owed to it by Chief. Ruby Hollow agreed to pay $2 million for the assignment of the debt; this discounted price accounted for the risk that Chief would default on the debt or be forced into bankruptcy by a third-party creditor.

In November 2018, LeadFX and Ruby Hollow agreed to modify the terms of the Debt Assignment Agreement after due diligence investigations revealed additional liabilities on the part of Chief. The purchase price of the Debt Assignment Agreement was reduced accordingly.

II.  Defendants' Management of Chief

After the closing date of the Share Sale Agreement, defendants Douglas Meadow and Geoff Stanley were appointed to Chief's Board of Directors. Chief's management, including Meadow and Stanley, evaluated options for improving Chief's financial status; Meadow and Stanley could have foreclosed on Chief's debt to Ruby Hollow but instead pursued other options for increasing Chief's value.

Throughout 2019, Chief's management prioritized resolving Chief's debts. On occasion, Ruby Hollow loaned funds to Chief

so it could satisfy its obligations.  At other times, Chief made payments to third parties on debts held by Ruby Hollow; equivalent amounts were then deducted from the debt owed by Chief to Ruby Hollow.

### Joint Venture

In 2019, Chief entered into a joint venture with IG Global ("IG").  The joint venture operated under a new entity called Tintic Consolidated Metals, LLC ("TCM").  The transaction was structured as follows: IG paid $1.2 million to Chief and assumed Chief's obligations under a $2.3 million loan; in exchange, Chief transferred some of its property to TCM.  TCM was contractually obligated to fund mineral exploration of the property, and Chief paid off most of its third-party creditors. As a result, Chief's value improved.

### Osisko Transaction

In 2022, Osisko Development Corporation ("Osisko") acquired Chief.  Chief was merged into Osisko and no longer exists.

As part of the Osisko Transaction, Chief's minority shareholders, including plaintiffs, were given the choice of selling their Chief shares at $.58 per share or rolling their shares into a membership interest in Emerald Hollow, LLC, which in turn owned shares in Osisko.  The last arms-length trade of Chief shares prior to Ruby Hollow's involvement in 2018 had been at $0.01 per share.  Plaintiffs, who had purchased their shares

in 2001 and 2002, chose to take the $0.58 per share buyout.

Plaintiffs did not dissent from the merger.  After the closing

of the Osisko Transaction in May 2022, defendants had no further

affiliation or employment with either Chief or Osisko.

## PROCEDURAL HISTORY

On August 16, 2022, the plaintiffs filed a class action

complaint alleging that the defendants breached their fiduciary

duties to Chief shareholders, violated § 10b of the Securities

Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), SEC

Rule 10b-5, 17 C.F.R. § 240.10b-5, and violated the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§

1962(b),(c).  The essence of plaintiffs' claims is that the

defendants improperly used Chief's assets, instead of their own,

to satisfy Chief's debts and acquire a majority interest in

Chief, then managed Chief so as to further their own interests

at the expense of minority shareholders.

An initial pretrial conference was held on November 21.

After inquiry from the Court, the plaintiffs stated that they

had not published any notice of the putative class action as

required by the Private Securities Litigation Reform Act.  See

15 U.S.C. § 78u-4(a)(3)(A)(i).  The Court advised plaintiffs'

counsel that unless the plaintiffs promptly published a notice,

the class claims under § 10(b) of the Exchange Act would be

dismissed.  Plaintiffs never advised the Court that they had
published the requisite notice.

A Pretrial Scheduling Order of November 21 set forth the
deadlines governing discovery and motion practice for class
certification and summary judgment.  All fact discovery was to
be completed by May 26, 2023, and all expert discovery was to be
completed by August 25, 2023.

On January 13, 2023, the plaintiffs moved to disqualify
defendants' counsel.  The motion was denied on February 17.
McGowan v. Stanley, No. 22cv6971 (DLC), 2023 WL 2118084
(S.D.N.Y. Feb. 17, 2023).

On February 1, a settlement conference was scheduled for
April 26.  On April 24, two days prior to the scheduled
settlement conference, plaintiffs' counsel requested an
adjournment.  Magistrate Judge Katharine Parker scheduled a
telephone conference for April 25 to discuss the adjournment,
and plaintiffs' counsel failed to appear.  The plaintiffs and
their counsel also failed to appear at duly noticed depositions
of the plaintiffs that the defendants had scheduled in New York
for the two days before the settlement conference, after
plaintiffs' counsel had failed to respond to their requests to
schedule the depositions but had suggested the week of the
settlement conference.  On May 2, the defendants moved for

sanctions against the plaintiffs for their failure to appear at the settlement conference.

Plaintiffs had moved for class certification on April 14. At a May 17, 2023 conference, held on the record, the Court denied the motion for class certification and granted the defendants' motion for sanctions. At that conference and in their motion papers, the defendants raised numerous discovery issues. The defendants advised the Court that they had sent a proposed protective order to the plaintiffs in December 2022, and to date, plaintiffs' counsel had not responded with any proposed revisions and instead only objected to the proposed protective order in April 2023. Due to this delay, the defendants had not been able to share discovery with the plaintiffs. Plaintiffs' counsel had also failed to respond to the defendants' multiple requests to schedule depositions of the individual plaintiffs.

The Court ordered plaintiffs' counsel to promptly respond to the defendants' proposed protective order so that the protective order could be entered that week. The Court also ordered the plaintiffs to make themselves available for depositions in New York by May 26, the close of fact discovery. At the conference, for the first time, plaintiffs' counsel requested depositions of the defendants. Defense counsel agreed

to schedule those depositions.  Plaintiffs' counsel also stated
that the plaintiffs would be filing an expert report on June 16.
The protective order was entered on May 19.

On June 16, the day on which the plaintiffs were required
to serve their expert report on the defendants, the plaintiffs
requested a 60-day extension of all pending deadlines, citing
the plaintiffs' desire to change counsel.  The request was
denied that same day, and, given the lack of expert discovery,
the briefing schedule for any motion for summary judgment was
moved up such that the motion was due July 14.  On July 12, the
defendants moved for summary judgment seeking dismissal with
prejudice of all five of plaintiffs' claims.  On July 14, the
plaintiffs moved for partial summary judgment on their claim
that defendants breached their fiduciary duty by appropriating
Chief's funds and assets to acquire the majority interest.  Both
motions were fully submitted on August 18.


### DISCUSSION

I.  Summary Judgment Standard

Summary judgment may be granted only when "the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  "To present a genuine issue of material fact
sufficient to defeat a motion for summary judgment, the record

must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party." Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted). Material facts are facts that "might affect the outcome of the suit under the governing law." Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d. Cir 2021) (citation omitted).  In considering a motion for summary judgment, a court "construe[s] the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 159 (2d Cir. 2021) (citation omitted).

Although the movant bears the initial burden of showing that there is no genuine dispute as to a material fact, when "the burden of proof at trial would fall on the nonmoving party, the moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." McKinney v. City of Middletown, 49 F.4th 730, 738 (2d Cir. 2022) (citation omitted). If the moving party carries its burden, the nonmoving party must "come forward with evidence that would be sufficient to support a jury verdict in its favor." Id. (citation omitted).  Rather than merely "deny the moving party's allegations in a general way," the party opposing summary judgment "must present

competent evidence that creates a genuine issue of material
fact." Id. (citation omitted).  Unsupported allegations do not
create a material issue of fact.  Id.

Local Rule 56.1, which codifies the above burden-
shifting scheme and was "adopted to aid the courts in
deciding summary judgment motions by quickly identifying
disputed material facts," requires that

> any motion for summary judgment be accompanied by a
> list of the material facts as to which the moving
> party contends there is no genuine issue to be tried .
> . . .  Should the nonmoving party wish to contest the
> assertions contained within a Rule 56.1 statement, the
> nonmoving party must respond to each of the
> statement's paragraphs and include, if necessary, a
> statement of the additional material facts that
> demonstrate a genuine issue for trial.  A nonmoving
> party's failure to respond to a Rule 56.1 statement
> permits the court to conclude that the facts asserted
> in the statement are uncontested and admissible.

T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 417–18 (2d
Cir. 2009) (citation omitted).

Local Rule 56.1(c) provides that "[e]ach numbered
paragraph in the statement of material facts set forth in
the statement required to be served by the moving party
will be deemed to be admitted for purposes of the motion
unless specifically controverted by a correspondingly
numbered paragraph in the statement required to be served
by the opposing party."  Rule 56.1(d) further requires that
each statement by the movant or opponent in the Rule 56.1

statements "including each statement controverting any
statement of material fact, must be followed by citation to
evidence which would be admissible" under Fed. R. Civ. P.
56(c).

As explained below, defendants adequately shifted their
burden as movants for summary judgment by pointing to a lack of
admissible evidence to prove every element of plaintiffs'
claims.  Plaintiffs, in responding to defendants' Rule 56.1
statement, raised no material issue of fact.  Instead,
plaintiffs' response consists of conclusory arguments and
citations to the pleadings, none of which constitutes admissible
evidence.  Defendants' motion for summary judgment is therefore
granted in its entirety.  Plaintiffs' motion for partial summary
judgment is denied.

II.  First and Second Claims: Breach of Fiduciary Duty
     (Corporate Opportunity, Waste and Misappropriation)

Federal courts apply the choice-of-law rules of the state
in which they sit.  Under New York's choice-of-law rules, the
law of the state of incorporation governs an allegation of
breach of fiduciary duty owed a corporation.  See Pereira v.
Farace, 413 F.3d 330, 341 (applying Delaware law to breach of
fiduciary duty claim involving Delaware corporation); see also
Walton v. Morgan Stanley & Co. Inc., 623 F.2d 796 (2d Cir.
1980).  Chief was an Arizona corporation, and plaintiffs claim

that defendants breached the fiduciary duties they owed as officers of Chief.  Therefore, Arizona law governs the breach of fiduciary duty claims.

Plaintiffs assert two claims for breach of fiduciary duty, both of which rely on plaintiffs' theory that defendants improperly used Chief's own assets to purchase their majority interest in Chief from LeadFX.  Arizona courts have "recognized the general rule that a director does not breach his fiduciary duty so long as he acts honestly and in good faith and breaches no specific duty owing to the corporation." Atkinson v Marquart, 541 P.2d 556, 558 (Ariz. 1975).  Plaintiffs bear the burden of proving causation and the amount of damages in a claim for breach of corporate fiduciary duty.  AMERCO v. Shoen, 907 P.2d 536, 542 (Ariz. Ct. App. 1995).  Although as a general rule "uncertainty as to amount of damages will not preclude recovery" once the right to damages has been established, Arizona law requires "a reasonable basis in evidence for the tier of fact to fix compensation when a dollar loss is claimed." Nelson v. Cail, 583 P.3d 1384, 1387 (Ariz. Ct. App. 1978).

Defendants' Rule 56.1 statement noted that plaintiffs have submitted no admissible evidence that defendants breached their fiduciary duty to plaintiffs.  Plaintiffs, in response, provided no admissible evidence of any instance in which defendants used

Chief's assets to satisfy a debt or obligations of defendants or engaged in improper self-dealing.  Because in this case the "the burden of proof at trial would fall on the [plaintiffs], the [defendants] can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." McKinney, 49 F.4th at 738 (citation omitted).  Defendants did just that: in their Rule 56.1 Statement, defendants pointed to the lack of evidence of breach, an essential element of plaintiffs' claim, thus shifting the initial burden to plaintiffs.  Plaintiffs cited no admissible evidence in their response.

III. Third Claim: Securities Fraud (Exchange Act and Rule 10b-5)

    Plaintiffs' third claim alleges that defendants' acquisition of Chief stock and debt was done as a scheme to defraud Chief shareholders, in violation of the Exchange Act. To recover damages in a private securities-fraud action under § 10(b) of the Exchange Act, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  See GAMCO Investors, Inc. v. Vivendi Universal, S.A., 838 F.3d 214, 217 (2d Cir. 2016).

Defendants in their Rule 56.1 Statement pointed to the lack of any evidence of any instance of defendants making any "untrue statement of a material fact or omit[ting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," as that phrase is used in SEC Rule 10b-5. Plaintiffs again cited no admissible evidence in response.

IV.  Fourth and Fifth Claims (RICO 18 U.S.C. § 1962(b) and (c))

To establish a RICO claim, a civil plaintiff must show (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was proximately caused by the violation of Section 1962.  See D'Addario v. D'Addario, 901 F.3d 80, 96 (2d Cir. 2018).  To establish a substantive RICO violation, a plaintiff must show "a pattern of racketeering activity."  18 U.S.C. § 1962(a)-(c).

Plaintiffs allege that defendants engaged in a pattern of mail and wire fraud to misappropriate and transfer Chief funds and obtain Chief's assets under false pretenses.  Once again, plaintiffs have pointed to no admissible evidence of any instance of misappropriation of Chief's assets by defendants. Nor have they provided admissible evidence of any misrepresentation or omission by defendants in connection with defendants' acquisition of shares or debt.

**CONCLUSION**

The defendants' July 12, 2023 motion for summary judgment is granted. The plaintiffs' July 12, 2023 motion for partial summary judgment is denied.

The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:    New York, New York
          October 12, 2023

DENISE COTE
United States District Judge

16